IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| IN RE DISCLOSURE OF MATTERS OCCURRING BEFORE A GRAND JURY TO THE LITIGATION TECHNOLOGY SERVICE CENTER<br><br>_____ | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | MISC. NO. 11-00163 JMS/RLP<br><br>ORDER GRANTING THE GOVERNMENT'S *EX PARTE* MOTION FOR AN ORDER AUTHORIZING DISCLOSURE OF GRAND JURY MATERIAL OBTAINED IN A SPECIFIC GRAND JURY INVESTIGATION TO DEPARTMENT OF JUSTICE CONTRACT EMPLOYEES UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 6(e)(3)(A)(ii) |

**ORDER GRANTING THE GOVERNMENT'S *EX PARTE* MOTION FOR AN ORDER AUTHORIZING DISCLOSURE OF GRAND JURY MATERIAL OBTAINED IN A SPECIFIC GRAND JURY INVESTIGATION TO DEPARTMENT OF JUSTICE CONTRACT EMPLOYEES UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 6(e)(3)(A)(ii)**

**I. INTRODUCTION**

The United States (the "government") has filed an *ex parte* motion seeking an order authorizing it to disclose information obtained in a specific grand jury investigation to employees at the Litigation Technology Service Center ("LTSC"), a government-owned, but contractor-operated facility that provides document processing services to the various United States Attorneys' offices. The government contends that this disclosure is permissible pursuant to Federal Rule of Criminal Procedure 6(e)(3)(A)(ii). Based on the following, the court agrees and

GRANTS the government's Motion.

## II. **BACKGROUND**

LTSC, created by the Executive Office for United States Attorneys ("EOUSA"), is owned by the government but operated by an independent contractor, IE Discovery, Inc. LTSC operates a secure in-house facility providing litigation technology support services -- such as copying, scanning, and coding discovery documents, case records, and native files -- for document-intensive investigations, prosecutions, and court proceedings.

LTSC contract personnel are employees of IE Discovery and not the government. LTSC employees must nonetheless (1) sign confidentiality agreements to maintain the privacy of all materials processed at LTSC, (2) execute conflict-of-interest forms, and (3) subject themselves to security background investigations. LTSC employees are also required to follow all grand jury secrecy requirements and other laws, regulations, and Department of Justice policies that are imposed on U.S. Attorneys' Office employees. For example, LTSC employees must secure, limit access, and prevent improper disclosure of grand jury materials, and are subject to the control of the U.S. Attorneys' Office and the EOUSA in handling all materials.

All LTSC data is maintained within a secure Department of Justice

information technology infrastructure, and LTSC operations are performed in a secure government-owned building.  Materials shipped to LTSC are subject to secure shipping protocols to ensure the physical security of sensitive information consistent with U.S. Attorney procedures.

As to the instant grand jury investigation, the government asserts that it needs LTSC's assistance to provide document and data processing that the local U.S. Attorney's office cannot handle on its own due to the scope of the document production and the technology required.

### III.  ANALYSIS

The court first recognizes the "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts." *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 424 (1983) (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958)).  Grand jury secrecy serves several purposes, including:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; [and] (5) to protect innocent

accused who is exonerated from disclosure of the fact
that he has been under investigation, and from the
expense of standing trial where there was no probability
of guilt.

*Procter & Gamble Co.*, 356 U.S. at 681-82 n.6 (quoting *United States v. Rose*, 215 F.2d 617, 628-29 (3rd Cir. 1954)); *see also Sells Eng'g*, 463 U.S. at 424 (quoting *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 219 (1979)).

Federal Rule of Criminal Procedure 6(e) "codifies the traditional rule of grand jury secrecy," and sets forth several exceptions to the general rule that "grand jurors, government attorneys and their assistants, and other personnel attached to the grand jury are forbidden to disclose matters occurring before the grand jury." *Sells Eng'g*, 463 U.S. at 425. One exception is outlined in Rule 6(e)(3)(A)(ii), which provides in relevant part:

> (A) Disclosure of a grand-jury matter -- other than the
> grand jury's deliberations or any grand juror's vote --
> may be made to:
>     . . .
>     (ii) any government personnel -- including those of
>     a state, state subdivision, Indian tribe, or foreign
>     government -- that an attorney for the government
>     considers necessary to assist in performing that
>     attorney's duty to enforce federal criminal law . . .
>     .

According to its plain language, the exception outlined in Rule 6(e)(3)(A)(ii) applies where: (1) the disclosure is to "any government personnel,"

and (2) the government attorney believes the disclosure is necessary to assist the attorney in performing his duties. *See also In re Grand Jury Proceedings*, 158 F. Supp. 2d 96, 105 (D. Mass. 2001) (explaining that in adopting the current language of Rule 6(e)(3)(A)(ii), Congress "was concerned not only with the scope of the use of grand jury materials, but also with the entity to whom those material are disclosed"). The government easily meets the second requirement in seeking disclosure to LTSC employees -- the government asserts that access of the materials by LTSC employees is essential to copy, scan, code, and review documents that the U.S. Attorney's Office is unable to do on its own. The first requirement, however, is more complex given that LTSC, although owned by the government and run according to its requirements, is operated by IE Discovery employees.

The text of Rule 6(e)(3)(A)(ii) does not define "government personnel" beyond reciting that the term is not limited to federal government personnel only, but also includes the personnel of other governments. Although the Rule originally limited disclosure to attorneys of the federal government only, it was expanded to allow disclosure to all government personnel that the U.S. Attorney's Office finds necessary to assist in performing its duty. *See In re Grand Jury Proceedings*, 158 F. Supp. 2d at 107-12 (outlining Rule 6(e)'s legislative

history in detail). This expansion recognized that criminal investigations may require assistance from other agencies and that grand jury materials "should be available to 'every legitimate member of [the] team' conducting the criminal investigation." *Sells Eng'g*, 463 U.S. at 439 (quoting Hearings on Proposed Amendments to the Federal Rules of Criminal Procedure before the Subcommittee on Criminal Justice of the House Committee on the Judiciary, 95th Cong., 1st Sess. 67 (1977) (testimony of Acting Deputy Attorney General Richard Thornburgh on behalf of the Justice Department)); *see* 1985 Advisory Committee Notes (explaining that amendment to the Rule specifying that disclosure may be made to state government personnel recognizes that "government attorneys in complex grand jury investigations frequently find it necessary to enlist the help of a team of government agents," which may include state government personnel); *see also United States v. Pimental*, 380 F.3d 575, 595 (1st Cir. 2004) (discussing legislative history).

Despite clarifying that Rule 6(e)(3)(A)(ii) is not limited to federal government employees, neither its plain language nor the legislative history provides meaningful guidance regarding whether an organization such as the LTSC, with both government and non-government characteristics, qualifies as "government personnel." Caselaw nonetheless provides some guidance that

"government personnel" is not strictly limited to its permanent, full-time employees only.

For example, *United States v. Lartey*, 716 F.2d 955 (2d Cir. 1983), held that disclosure of grand jury materials to a retired Internal Revenue Service agent assisting the government as a specialist in investigative accounting was "entirely proper." *Lartey* reasoned that "[t]here is nothing in the legislative history of the 1977 amendments to Rule 6(e) permitting disclosure to 'government personnel' to indicate that the term is limited to permanent civil service employees of the United States." *Id.* at 964. Indeed, the retired agent worked exclusively for the government while assisting on the investigation, the records were kept in a secure government location, and the retired agent discussed the material only with government attorneys and agents. *Id.* at 963; *see also United States v. Anderson*, 778 F.2d 602, 605 (10th Cir. 1985) (holding that a trust law expert, under contract with the government, fell within the "government personnel" exception to Rule 6(e)); *see also United States v. Benjamin*, 852 F.2d 413, 419 (9th Cir. 1988), *overruled on other grounds by United States v. Spillone*, 879 F.2d 514, 520 (9th Cir. 1989) (suggesting that Rule 6(e)(3)(A)(ii) should not be read to preclude "resort to private investigative help"); *But see In re Grand Jury Matter*, 607 F. Supp. 2d 273, 275-76 (D. Mass. 2009) (rejecting that Rule 6(e)(3)(A)(ii) would

permit disclosure to employees of a private consulting firm because they are not "employees of the government").

*Pimental* is likewise instructive. The First Circuit concluded that a Massachusetts Insurance Fraud Bureau (the "MIFB") investigator fell within the definition of "government personnel" as a "quasi-governmental" entity. Specifically, although the MIFB was funded by two voluntary associations of Massachusetts insurance carriers, its creation was authorized by Massachusetts statute, its funding is mandated by statute, five of its fifteen board members are public officials, its "purpose, organizational scheme, and basic operations are all dictated by statute, and it is subject to the constant oversight of the Massachusetts legislature." *Id.* at 592-93. *Pimental* held an entity that "straddles the line between a government and private entity" can encompass government personnel for the purposes of Rule 6(e)(3)(A)(ii). *Id.* at 594.[1]

The court agrees with the reasoning of these cases that Rule 6(e)(3)(ii)'s limitation to "government personnel" is not restricted to full-time

---

[1] In contrast, *United States v. Tager*, 638 F.2d 167 (10th Cir. 1980), held that disclosure of grand jury material to an employee of the Insurance Crime Prevention Institute (the "ICPI"), an organization funded by insurance companies for the purpose of investigating possible frauds against them, did not fall within the exception. Unlike the MIFB in *Pimental*, the ICPI and its investigator did not have "any official position whatever," and had simply developed the case on their own, referred it to the United States Postal Inspection Services, and then continued to assist with the investigation. *Id.* at 168. In light of *Anderson*, *United States v. Benjamin*, 852 F.2d 413, 419 (9th Cir. 1988), noted that *Tager* "is doubtful authority even in its own circuit."

8

permanent government employees; instead, the court's analysis must be guided by the particular circumstances of the entity at issue and the need for disclosure. Applying these considerations, LTSC is much more closely aligned as "government personnel" than the individuals at issue in *Anderson* and *Lartey*, and exhibits many similar characteristics to the MIFB that *Pimental* found relevant. Specifically, although LTSC is operated by IE Discovery, in all other respects LTSC appears to have the characteristics of a governmental entity -- (1) LTSC was created and is owned by the federal government to fulfill a particularized need for technology support services for document-intensive investigations/prosecutions; (2) LTSC data is maintained within a secure Department of Justice information technology infrastructure; (3) LTSC operations are performed in a secure government-owned building; (4) LTSC employees are subject to all laws, regulations, and Department of Justice policies that are imposed on U.S. Attorney's Office employees; and (5) the U.S. Attorney's Office and the EOUSA ultimately control the handling of all case data and documents.

Further, all of the safeguards that LTSC is required to take in ensuring the security and confidentiality of the materials is consistent with the long-established purposes of grand jury secrecy. Disclosure to LTSC, which merely processes the documents and data and follows all government protocols for

security, should not affect witnesses' willingness to come forward to testify, increase the risk of flight by grand jury targets, damage the reputations of those accused, or inject outside interference into the grand jury.  Rather, disclosure is necessary for the simple fact that the government cannot process all of the documents relevant to this investigation on its own and created LTSC for this very purpose.  Under these circumstances, the court finds that LTSC employees are "government personnel" for purposes of Rule 6(e)(3)(A)(ii) and that disclosure of grand jury materials as sought in the government's ex parte Motion is proper.

## IV.  <u>CONCLUSION</u>

Based on the above, the court GRANTS the government's *ex parte* Motion and authorizes disclosure of the specific grand jury material outlined in its Motion to LTSC under Federal Rule of Criminal Procedure 6(e)(3)(A)(ii).

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 25, 2011.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*In re Disclosure of Matters Occurring Before a Grand Jury to the Litig. Tech. Serv. Ctr.*, Misc. No. 11-00163 JMS/RLP, Order Granting the Government's *Ex Parte* Motion for an Order Authorizing Disclosure of Grand Jury Material Obtained in a Specific Grand Jury Investigation to Department of Justice Contract Employees under Federal Rule of Criminal Procedure 6(e)(3)(A)(ii)